## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA
### MOBILE DIVISION

| | | |
|---|---|---|
| NADINE HOWELL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **Case No.:** |
| V. | ) | |
| | ) | |
| HANSEN AIR PROS, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| DEFENDANT(S). | ) | |
| | ) | |

## COMPLAINT

## JURISDICTION

1.      The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2.      This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3.      This is a suit authorized and instituted under the Age Discrimination in Employment Act, 29 U.S.C. § 621, 626(d)(1), et seq. (ADEA).

4.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff timely filed another charge of discrimination with the EEOC within 180 days of the further acts of retaliation (Exhibit B). The

plaintiff further sued within ninety (90) days after receipt of the right-to-sue letters issued by the EEOC (Exhibit C & Exhibit D).

**PARTIES**

5.      Plaintiff, Nadine Howell, ("Plaintiff" or "Howell") is a resident of Grand Bay, Mobile County, Alabama, and performed work for the Defendant in the counties composing the Southern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Mobile Division.

6.      Defendant Hansen Airpros ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

7.      At all times relevant to the allegations in this Complaint, Plaintiff was over the age of forty (40).

8.      Defendant employed at least fifteen (15) people during the current or preceding calendar year.

9.      Upon information and belief Defendant is part of an integrated enterprise with more than 500 employees.

10.      Defendant employed at least fifteen (20) people during the current or preceding calendar year.

11.      Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar

year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## FACTS

12.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

13.    On or about January 6, 2018, Howell began her employment with defendant as a Commercial Revenue Manager.

14.    Howell is a female, and over the age of 40.

15.    Howell is a person with one or more disabilities that substantially limit one or more major life activities

16.    Howell worked more than 1250 hours for defendant in the year preceding the events that are outlined in this complaint.

17.    In or about April 2022, Howell needed an emergency surgery to address a ruptured organ.

18.    When Howell went to the hospital that day, she informed Defendant's employee, Chad Setchell, of her need for unforeseeable leave under the FMLA.

19.    When Howell informed defendant of her condition, she asked about FMLA.

20.    Defendant did not give Howell any notices of her rights under the FMLA and did not inform her how to apply.

21.     When Howell had emergency surgery, her doctor told her that she would need 8 weeks off work at a minimum.

22.     Defendant failed to give Howell eight undisturbed weeks of medical leave, by continually calling her about work-related issues.

23.     After being out for a few weeks, Setchell informed Howell that if she wanted to stay off the complete eight weeks, she had to apply for FMLA.

24.     When Howell reached out to Caitlin Whitfield of HR, she was told that it didn't work like that, and she would no longer be able to apply for FMLA.

25.     After only four weeks of leave, Howell was afraid she would lose her job if she didn't return and was forced to return to the office, despite her doctor's orders and entitlement under the FMLA.

26.     Immediately upon Howell's return, her manager became upset and sought to place her on administrative leave, even though Howell did nothing wrong.

27.     Within a week of Howell's return, Defendant accused her of disclosing confidential information and put her on administrative leave.

28.     Howell had not disclosed any information that she was not permitted to release, and after an investigation, Howell was cleared of any wrongdoing.

29.     A week after Howell returned to work prematurely and after being placed on leave, she disclosed to Chad that she had another serious health condition – cancer.

30.     On or about July 12, 2022, Howell experienced another FMLA qualifying event when her son was involved in a motorcycle accident and became incapacitated.

31.     Howell informed Defendant that she would need time off to attend to her son's medical needs.

32.     Howell spoke to Steve Weber, Vice President of Business Administration, and questioned if she needed to apply for FMLA.

33.     Weber told her there was no need to apply, because she was already on administrative leave.

34.     Days later, Howell's son succumbed to his injuries and passed away.

35.     On or about August 18, 2022, Defendant's HR Representative – Whitfield informed Howell that the company was restructuring and that her position was eliminated.

36.     Shortly after, Howell spoke to VP Steve Weber. Weber told her that there was nothing found in the investigation, and she was eligible to apply for other positions within the company, because her position was eliminated.

37.     Howell's position was not eliminated.

38.     A younger woman (late twenties), Kennedy Lowe, filled Howell's position.

39.     .Howell's position was filled by a person who was under the age of 40, who had no medical conditions, and had not taken FMLA qualifying leave.

40.     Howell's position was assumed by a person who had no experience pertaining to this role and had just started at the company a few months before.

41.     When Plaintiff filed for unemployment compensation with the DOL, she was denied.

42.     At that point, Defendant changed the reason it terminated her as being related to the investigation.

43.     On or about September 2, 2022, Howell filed a charge of discrimination and retaliation with the EEOC, against Defendant, regarding the facts above (Charge No. 420-2022-03390).

44.     On or about January 25, 2023, Howell attended an unsuccessful EEOC mediation with Defendant.

45.     Just over a week later, on or about February 3, 2023, Defendant filed a lawsuit against Howell alleging conduct that occurred during the time when Howell was on leave.

46.     In or about March 2023, Howell had a job fully secured at another company and was being assigned a company car. Suddenly, the company stopped contacting her completely, with no explanation.

47.    Later. Howell learned that Defendant disparaged her to prospective employers, causing her to lose job opportunities.

## COUNT I: ADA FAILURE TO ACCOMMODATE

48.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

49.    Plaintiff suffered from multiple physical impairments – an ovary rupture and skin cancer.

50.    Plaintiff's ovary rupture affected her such that many major life activities were restricted as compared to the average person in the general population – she became septic; was placed on bed rest; and faced death if her complications were not resolved.

51.    Plaintiff required the reasonable accommodation of time off of work for surgery and eight weeks of recovery.

52.    Plaintiff requested that Defendant provide a reasonable accommodation.

53.    Plaintiff performed the essential functions of her job with or without accommodation for her disability.

54.    Defendant failed to accommodate Plaintiff by continuing to give her work, failing to inform her of her FMLA rights, then telling her it was too late to

apply for the FMLA job protection, and creating the expectation that she had to return to work despite her doctor's orders.

55.    Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff performed the essential functions of her job.

56.    Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT II: ADA RETALIATION - TERMINATION

57.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

58.    Plaintiff suffered from multiple physical impairments – an ovary rupture and skin cancer.

59.    Plaintiff's ovary rupture affected her such that many major life activities were restricted as compared to the average person in the general population – she became septic; was placed on bed rest; and faced death if her complications were not resolved.

60.    Plaintiff required the reasonable accommodation of time off of work for surgery and eight weeks of recovery.

61.    Plaintiff requested that Defendant provide a reasonable accommodation.

62.     On or about August 18, 2022, Defendant terminated Plaintiff's employment, citing eliminating her position as the reason.

63.     Plaintiff's position was not eliminated. Instead, Defendant replaced her with someone who was unqualified for the role, but who had not disclosed or requested accommodations for disabilities.

64.     There is no logical, medical or other basis to believe that Plaintiff's disability would prevent Plaintiff from performing the essential functions of the job.

65.     But for Plaintiff's disabilities, Defendant would have retained Plaintiff in her position as a Commercial Reveue Manager.

66.     Defendant violated the ADA by terminating her employment because of her disabilities.

67.     Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT III: ADA DISCRIMINATION - TERMINATION

68.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

69.     Plaintiff suffered from the physical impairment of a ruptured ovary.

70.     Defendant knew of Plaintiff's disabilities.

71.     Plaintiff's ovary rupture affected her such that many major life activities were restricted as compared to the average person in the general population

– she became septic; was placed on bed rest; and faced death if her complications were not resolved.

72.    Plaintiff performed the essential functions of her job with or without accommodation for her disability.

73.    At all times relevant to this complaint, Plaintiff performed the essential functions of her duties as Commercial Reveue Manager in in a satisfactory or better manner.

74.    On or about August 18, 2022, Defendant terminated Plaintiff's employment, citing eliminating her position as the reason.

75.    Plaintiff's position was not eliminated. Instead, Defendant replaced her with someone who was unqualified for the role, but who had not disclosed or requested accommodations for disabilities.

76.    There is no logical, medical or other basis to believe that Plaintiff's disability would prevent Plaintiff from performing the essential functions of the job.

77.    But for Plaintiff's disabilities, Defendant would have retained Plaintiff in her position as a Commercial Reveue Manager.

78.    Defendant violated the ADA by terminating her employment because of her disabilities.

79.    Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## COUNT IV:  ADA – PERCEPTION - DISABILITY

80.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

81.    Plaintiff is a person with an impairment – skin cancer, that at the time of her termination, had not substantially restricted her as compared to the average person in the general population.

82.    A week after Howell returned to work prematurely and after being placed on leave, she disclosed to Chad that she had another serious health condition – skin cancer.

83.    Within a couple months of Plaintiff disclosing that she had cancer, Defendant terminated Plaintiff's job, stating that her job was "eliminated."

84.    Plaintiff's job was not eliminated. Instead, Defendant filled Plaintiff's position with a person who was unqualified for the role, but who had not disclosed impairments or perceived disabilities, such as cancer.

85.    But for Defendant's perception of Plaintiff having a disability, Defendant would have retained Plaintiff in her position as Commercial Reveue Manager.

86.    In failing to retain Plaintiff, Defendant violated the ADA because of Defendant's perception of Plaintiff having a disability.

87.    Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT V: ADA – RETALIATION - TERMINATION

88.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

89.     Plaintiff was qualified for her position and able to perform the essential functions of the job.

90.     On or about September 2, 2022, Plaintiff engaged in protected activity, when she filed a charge of discrimination based on sex, with the EEOC, against Defendant (Charge No. 420-2022-03390).

91.     On or about January 25, 2023, Plaintiff attended an unsuccessful EEOC mediation with Defendant.

92.     Just over a week later, on or about February 3, 2023, Defendant filed a lawsuit against Plaintiff.

93.     Since then, Plaintiff learned that Defendant has been disparaging her to prospective employers. Plaintiff had a job fully secured with an employer, but suddenly never heard from them again.

94.     But for Plaintiff's protected activity, Defendant would not have disparaged Plaintiff to prospective employers or filed a lawsuit against her.

95.     Defendant violated ADA by filing a lawsuit against Plaintiff and disparaging her to prospective employers because Plaintiff for engaged in protected activity.

96.    Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of compensatory damages including mental anguish, pay and benefits.

## COUNT VI: ADEA - RETALIATION

97.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

98.    Plaintiff was qualified for her position and able to perform the essential functions of the job.

99.    On or about September 2, 2022, Plaintiff engaged in protected activity, when she filed a charge of discrimination based on sex, with the EEOC, against Defendant (Charge No. 420-2022-03390).

100.    On or about January 25, 2023, Plaintiff attended an unsuccessful EEOC mediation with Defendant.

101.    Just over a week later, on or about February 3, 2023, Defendant filed a lawsuit against Plaintiff.

102.    Since then, Plaintiff learned that Defendant has been disparaging her to prospective employers. Plaintiff had a job fully secured with an employer, but suddenly never heard from them again.

103.    But for Plaintiff's protected activity, Defendant would not have disparaged Plaintiff to prospective employers or filed a lawsuit against her.

104.   Defendant violated ADEA by filing a lawsuit against Plaintiff and disparaging her to prospective employers because Plaintiff for engaged in protected activity.

105.   Because of Defendant's violation of the ADEA, Plaintiff has been damaged suffering loss of pay and benefits.

## COUNT VII: ADEA -TERMINATION

106.   At all times relevant to the allegations in this Complaint, Plaintiff was over the age of forty (40).

107.   Defendant hired Plaintiff on or about January 6, 2018, as a Commercial Revenue Manager.

108.   Defendant terminated Plaintiff's employment on or about July 12, 2022, stating that the position was being "eliminated."

109.   When Defendant terminated her employment, Plaintiff was over forty (40) years of age and substantially older than the employee who was placed in her position, who was younger than forty.

110.   The employee who was younger than forty was placed in the position, despite the fact she was unqualified for the role and that Defendant claimed the position was eliminated.

111. Defendant's actions in terminating Plaintiff's employment, while retaining employees under age 40, violated the ADEA.

112.   Defendant's actions in terminating Plaintiff's employment, while retaining substantially younger employees, violated the ADEA.

113.   Because of Defendant's violation of ADEA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT VIII: ADEA - RETALIATION

114.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

115.   Plaintiff was qualified for her position and able to perform the essential functions of the job.

116.   On or about September 2, 2022, Plaintiff engaged in protected activity, when she filed a charge of discrimination based on sex, with the EEOC, against Defendant (Charge No. 420-2022-03390).

117.   On or about January 25, 2023, Plaintiff attended an unsuccessful EEOC mediation with Defendant.

118.   Just over a week later, on or about February 3, 2023, Defendant filed a lawsuit against Plaintiff.

119.   Since then, Plaintiff learned that Defendant has been disparaging her to prospective employers. Plaintiff had a job fully secured with an employer, but suddenly never heard from them again.

120.   But for Plaintiff's protected activity, Defendant would not have disparaged Plaintiff to prospective employers or filed a lawsuit against her.

121.    Defendant violated ADEA by filing a lawsuit against Plaintiff and disparaging her to prospective employers because Plaintiff for engaged in protected activity.

122.    Because of Defendant's violation of the ADEA, Plaintiff has been damaged suffering loss of pay and benefits.

## COUNT IX: FMLA INTERFERENCE

123.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

124.    During the 12-month period before April 1, 2022, Defendant employed Plaintiff for at least 1,250 hours of service.

125.    Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's April 1, 2022, health issues.

126.    During the week of April 1, 2022, Defendant employed fifty or more employees, working within 75 miles of the location where Plaintiff worked.

127.    On April 1, 2022, Plaintiff provided notice of unforeseeable FMLA leave to Defendant via Chad Setchell.

128.    Plaintiff provided notice of her unforeseeable need of FMLA leave the same day that the need for FMLA leave arose.

129.    Before April 1, 2022, Plaintiff had never informed Defendant of the need for FMLA leave.

130.   Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

131.   Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

132.   Defendant failed to provide Plaintiff with a FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

133.   Defendant interfered with Plaintiff's FMLA rights by not informing her of those rights and by forcing her to return from leave against her doctor's orders due to fear of having unprotected leave.

134.   Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's July 12, 2022, health issues.

135.   During the week of July 12, 2022, Defendant employed fifty or more employees, working within 75 miles of the location where Plaintiff worked.

136.   On or about July 12, 2022, Plaintiff's son was involved in a motorcycle accident and became incapacitated. Plaintiff informed Defendant that she would need time off to attend to her son's medical needs.

137.   On or about July 12, 2022, Plaintiff provided notice of unforeseeable FMLA leave to Steve Weber.

138.   Plaintiff provided notice of her unforeseeable need of FMLA leave the same day that the need for FMLA leave arose.

139.   Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

140.   Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

141.   Defendant failed to provide Plaintiff with a FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

142.   A month later, on or about August 18, 2022, Defendant terminated Plaintiff's employment, stating that the position was being "eliminated."

143.   The position was not eliminated. Instead, Defendant filled the position with another employee who was unqualified for the role, but who had not given notice of FMLA qualifying leave.

144.   Defendant knew that Plaintiff suffered from FMLA qualifying conditions for which she needed treatment through her doctor and that her son suffered from FMLA qualifying conditions, for which she needed to be a caretaker.

145.   Because of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT X: FMLA RETALIATION

146.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

147.    During the 12-month period before April 1, 2022, Defendant employed Plaintiff for at least 1,250 hours of service.

148.    Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before April 1, 2022.

149.    During the week of April 1, 2022, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

150.    On April 1, 2022, Plaintiff provided notice of unforeseeable FMLA leave to Chad Setchell.

151.    Plaintiff provided notice of her unforeseeable need of FMLA leave as soon as practicable due to her medical emergency.

152.    Before April 1, 2022, Plaintiff had never informed Defendant of a need for FMLA leave.

153.    Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

154.    Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

155.    Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

156.   Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's July 12, 2022, health issues.

157.   During the week of July 12, 2022, Defendant employed fifty or more employees, working within 75 miles of the location where Plaintiff worked.

158.   On or about July 12, 2022, Plaintiff's son was involved in a motorcycle accident and became incapacitated. Plaintiff informed Defendant that she would need time off to attend to her son's medical needs.

159.   On July 12, 2022, Plaintiff provided notice of unforeseeable FMLA leave to Steve Weber.

160.   Plaintiff provided notice of her unforeseeable need of FMLA leave the same day that the need for FMLA leave arose.

161.   Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

162.   Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

163.   Defendant willfully failed to provide Plaintiff with a FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

164.   A month later, on or about August 18, 2022, Defendant terminated Plaintiff's employment, stating that the position was being "eliminated."

165.   The position was not eliminated. Instead, Defendant filled the position with another employee who was unqualified for the role, but who had not given notice of FMLA qualifying leave.

166.   Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which she needed treatment through her doctor from April 1, 2022, for 8-weeks and that Plaintiff's son suffered from FMLA qualifying conditions on July 12, 2022.

167.   Defendant's terminated Plaintiff's employment, in whole or part, because Plaintiff requested information about FMLA leave and took FMLA qualifying leave.

168.   On or about September 2, 2022, Plaintiff filed a charge of discrimination with the EEOC, against Defendant, alleged discrimination and retaliation under the FMLA (Charge No. 420-2022-03390).

169.   On or about January 25, 2023, Plaintiff attended an unsuccessful EEOC mediation with Defendant.

170.   Just over a week later, on or about February 3, 2023, Defendant filed a lawsuit against Plaintiff.

171. Since then, Plaintiff learned that Defendant has been disparaging her to prospective employers.

172. Plaintiff had a job fully secured, then suddenly never heard from the company again.

173. Defendant terminated Plaintiff's employment, in whole or part because she sought to understand and exercise FMLA rights. Defendant filed a lawsuit against Plaintiff and disparaged her to prospective employers in whole or part, because she acted in protected activity by complaining of FMLA discrimination.

174. Because of Defendant's retaliatory termination decision, disparaging comments, and unjustified lawsuit in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act.

C.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act.

D.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

E.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

F.    Award her back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

G.    Attorneys' fees and costs;

H.    Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

I.      Any different or additional relief as determined by the Court to which

Plaintiff is entitled.

*s/Kira Fonteneau*
_____
Kira Fonteneau
Lacey Wilson

**OF COUNSEL:**

BARRETT & FARAHANY

2 North 20th St, Suite 900
Birmingham, AL 35203
P.O. Box 530092
Atlanta, GA 30314
(205) 564-9005
kira@justiceatwork.com
lacey@justiceatwork.com

**PLEASE SERVE DEFENDANT AS FOLLOWS:**

**Hansen Air Pros, LLC**

**C/O Corporation Service Company, Inc.**

**641 South Lawrence Street**

**Montgomery, AL 36104**